**NO. 23-2073**

In The

# United States Court Of Appeals
# For The Fourth Circuit

## JOHN DOE 2,

*Plaintiff – Appellant,*

v.

## NORTH CAROLINA STATE UNIVERSITY,

*Defendant – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH**

_____

**BRIEF OF APPELLEE**

_____

**Alex J. Hagan**
**ELLIS & WINTERS LLP**
**P.O. Box 33550**
**Raleigh, NC  27636**
**(919) 865-7000**

**Dixie T. Wells**
**Jeremy M. Falcone**
**ELLIS & WINTERS LLP**
**P.O. Box 2752**
**Greensboro, NC  27402**
**(336) 217-4193**

*Counsel for Appellee*

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>23-2073</u>       Caption: <u>Doe 2 v. North Carolina State University</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>North Carolina State University</u>
(name of party/amicus)

who is <u>Appellee</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.      Does party/amicus have any parent corporations? ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
        If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Alex J. Hagan     Date: 10/23/2023

Counsel for: North Carolina State University

Print to PDF for Filing     Reset Form

- 2 -

# <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES........................................................................ ii

STATEMENT OF JURISDICTION ..........................................................1

STATEMENT OF ISSUES ........................................................................1

STATEMENT OF FACTS .........................................................................1

SUMMARY OF ARGUMENT..................................................................3

ARGUMENT .............................................................................................4

    Standard of Review...............................................................................4

    Discussion.............................................................................................4

    I.     This Court Should Affirm the District Court's Dismissal of Doe's Claim Because Doe Does Not Allege that an Official with Authority Had Actual Knowledge.................................................7

           A.    Neither Clinkscales nor the Coaches Were Officials with Authority to Address the Alleged Discrimination and to Institute Corrective Measures as Required by Jennings ............8

           B.    Doe Asks this Court to Draw Improper Inferences. .................11

    II.    This Court Should Affirm the District Court's Dismissal of Doe's Claim Because NC State Did Not Have Actual Notice of Conduct Amounting to Harassment ....................................................14

    III.    Doe Has Not Adequately Alleged a Pre-Assault Claim.....................19

CONCLUSION.........................................................................................24

CERTIFICATE OF COMPLIANCE .......................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

<u>Ashcroft v. Iqbal</u>,
    556 U.S. 662 (2009)....................................................................4, 10, 13, 15

<u>Baynard v. Malone</u>,
    268 F.3d 228 (4th Cir. 2001)..........................................................20

<u>Bell Atlantic Corp. v. Twombly</u>,
    550 U.S. 544 (2007)....................................................................4, 10, 13, 15

<u>Burks v. Bd. of Trs. of Fla. Agric. & Mech. Univ.</u>,
    505 F. Supp. 3d 1273 (N.D. Fla. 2020) ........................................8

<u>Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.</u>,
    526 U.S. 629 (1999)....................................................................5

<u>Doe ex rel. Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.</u>,
    35 F.4th 459 (6th Cir. 2022), <u>cert. denied sub nom.</u>
    <u>Metro. Gov't of Nashville & Davidson Cnty. v. Doe</u>,
    ___ U.S. ___, 143 S. Ct. 574 (2023) ........................................ 19-20

<u>Doe v. Charlotte Mecklenburg Bd. of Educ.</u>,
    No. 3:18-cv-00586-RJC-DSC, 2023 WL 1074104
    (W.D.N.C. Jan. 26, 2023), <u>appeal docketed</u>,
    No. 23-1182 (4th Cir. Feb. 21, 2023) ..........................................19

<u>Doe v. Fairfax Cnty. Sch. Bd.</u>,
    1 F.4th 257 (4th Cir. 2021)...................................................<u>passim</u>

<u>Doe v. Madison Metro. Sch. Dist.</u>,
    No. 15-CV-570-BBC, 2017 WL 527892 (W.D. Wis. Feb. 9, 2017),
    <u>aff'd sub nom.</u> <u>Doe No. 55 v. Madison Metro. Sch. Dist.</u>,
    897 F.3d 819 (7th Cir. 2018), <u>reh'g en banc granted, opinion vacated</u>
    (Oct. 11, 2018) <u>on reh'g en banc sub nom.</u> <u>C.S. v. Madison Metro. Sch.</u>
    <u>Dist.</u>, 34 F.4th 536 (7th Cir. 2022), and <u>aff'd sub nom.</u>
    <u>C.S. v. Madison Metro. Sch. Dist.</u>, 34 F.4th 536
    (7th Cir. 2022) (en banc)................................................................15

Doe v. N.C. State Univ.,
     No. 5:23-CV-044-FL, 2023 WL 5916453 (E.D.N.C. Sept. 11, 2023) ...........7

Doe v. School Board of Broward County,
     604 F.3d 1248 (11th Cir. 2010).......................................................20, 21, 22

Facchetti v. Bridgewater Coll.,
     175 F. Supp. 3d 627 (W.D. Va. 2016)............................................................18

Francis v. Giacomelli,
     588 F.3d 186 (4th Cir. 2009)..........................................................................15

Gebser v. Lago Vista Indep. Sch. Dist.,
     524 U.S. 274 (1998)...............................................................................passim

Jennings v. Univ. of N.C.,
     482 F.3d 686 (4th Cir. 2007)..................................................................passim

Johnson v. Am. Towers, LLC,
     781 F.3d 693 (4th Cir. 2015)..........................................................................15

Karasek v. Regents of Univ. of Cal.,
     956 F.3d 1093 (9th Cir. 2020)..................................................................23, 24

K.C. ex rel. T.C. v. Marshall Cnty. Bd. of Educ.,
     762 F. App'x 226 (6th Cir. 2019).................................................................20

Koon v. North Carolina,
     50 F.4th 398 (4th Cir. 2022).....................................................................18, 22

Locke v. N.C. State Univ.,
     No. 5:22-CV-344-FL, 2023 WL 5916455 (E.D.N.C. Sept. 11, 2023) ...........7

Moss v. Pa. State Univ.,
     No. 4:22-CV-00529, 2023 WL 1456773 (M.D. Pa. Feb. 1, 2023)................10

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,
     591 F.3d 250 (4th Cir. 2009)......................................................................4, 13

Occupy Columbia v. Haley,
     738 F.3d 107 (4th Cir. 2013)............................................................................4

Plamp v. Mitchell Sch. Dist. No. 17-2,
        565 F.3d 450 (8th Cir. 2009)...............................................................9

Roberts v. Glenn Indus. Grp., Inc.,
        998 F.3d 111 (4th Cir. 2021) .............................................................12

Rosa H. v. San Elizario Indep. Sch. Dist.,
        106 F.3d 648 (5th Cir. 1997)...............................................................9

Ross v. Corp. of Mercer Univ.,
        506 F. Supp. 2d 1325 (M.D. Ga. 2007) ..............................................8

Ross v. Univ. of Tulsa,
        859 F.3d 1280 (10th Cir. 2017)........................................................10

Simpson v. Univ. of Colo. Boulder,
        500 F.3d 1170 (10th Cir. 2007)....................................................23, 24

S.P. v. Ne. Indep. Sch. Dist.,
        No. SA21CV0388JKPRBF, 2021 WL 3272210
        (W.D. Tex. July 30, 2021)............................................................15, 16

Williams v. Bd. of Regents of Univ. Sys. of Ga.,
        477 F.3d 1282 (11th Cir. 2007).........................................................9

**Statutes:**

20 U.S.C. § 1681, et seq.....................................................................1

20 U.S.C. § 1681(a) ...........................................................................4

20 U.S.C. § 1682................................................................................8

28 U.S.C. § 1291................................................................................1

**Rules:**

Fed. R. Civ. P. 12(b)(6) .....................................................................1

## STATEMENT OF JURISDICTION

John Doe 2 ("Doe") sued North Carolina State University ("NC State"), alleging violations of Title IX of 20 U.S.C. § 1681, et seq.  NC State moved to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the District Court granted NC State's motion. Doe timely appealed.  This Court has jurisdiction to review Doe's appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I.      Whether the District Court properly granted NC State's motion to dismiss Doe's Complaint for failure to state a Title IX claim, where the Complaint fails to allege that a person with authority to address the alleged discrimination had actual knowledge of harassment.

II.     Whether the District Court properly granted NC State's motion to dismiss Doe's Complaint for failure to state a Title IX claim, where the Complaint fails to allege that the conduct in question amounts to harassment.

III.    Whether the District Court properly granted NC State's motion to dismiss Doe's Complaint for failure to state a Title IX claim, where the Complaint fails to allege the requisite notice that would render NC State liable for a pre-assault claim.

## STATEMENT OF FACTS

Doe attended NC State as a student-athlete in 2020 and 2021.  JA 010.  He was recruited to attend the institution.  JA 009.  While Doe was enrolled at NC State, Robert M. Murphy, Jr. was the Director of Sports Medicine.  JA 010.  In this role, Murphy provided "direct oversight and coordination of day-to-day athletic training,

medical services operations, and sports medicine facility management for" NC State's teams and student-athletes.  JA 011.

Doe alleges that, in 2021, he was experiencing and sought treatment for pain, and, on two occasions, Murphy touched his genitals during treatment.  JA 012–014. This interaction prompted Doe to "doubt[]" whether Murphy's conduct was within the confines of "professionally acceptable athletic training technique[s] for a licensed athletic trainer," and, thereafter, Doe refused to "allow Murphy to treat him when he needed assistance from the Sports Medicine Department trainers."  JA 014.

The Complaint includes no allegation that Doe reported Murphy's alleged conduct to anyone affiliated with NC State.  Rather, Doe alleges that he learned from two separate complaints, filed in late 2022 by Benjamin Locke and another individual identified as John Doe, that Head Soccer Coach Kelly Findley and two assistant coaches were "aware of Murphy's reportable sexual conduct towards student-athletes prior to 2016, had discussed it amongst themselves, and had not immediately reported it to Title IX staff."  JA 022.  Doe further alleges, based on what he read in Locke's complaint, that, "[i]n early 2016, Findley told Senior Associate Athletic Director Sherard Clinkscales[] that Murphy was engaging in what he suspected was sexual grooming of male student-athletes."  JA 016.  Doe alleges that, in 2022, after Locke made a report about Murphy to NC State, NC State performed a Title IX investigation, which concluded that a violation of NC State's

applicable policy would have been substantiated if Murphy had remained employed at the university.  See JA 016, JA 019–020.

Doe sued NC State in the United States District Court for the Eastern District of North Carolina, alleging violations of Title IX.  JA 027–035.  Doe filed the Complaint under a pseudonym and moved for leave to proceed anonymously.  See JA 037.  NC State moved to dismiss Doe's Complaint, see JA 037, arguing that Doe failed to state a claim upon which relief could be granted because he "fail[ed] to allege facts that, if true, would support an inference that [NC State] received actual notice of the alleged abuse," JA 039.  The District Court granted NC State's motion and dismissed Doe's suit.  JA 037–044.

## SUMMARY OF ARGUMENT

The District Court properly dismissed Doe's Complaint for at least three reasons, any of which standing alone is sufficient to affirm the order:  (I) Doe fails to allege that a proper person at NC State, having the requisite authority to impute liability on NC State itself, had actual knowledge of harassment; (II) Doe fails to allege that NC State had knowledge of conduct amounting to discrimination or harassment; and (III) Doe fails to allege that NC State had the required notice that would render it liable for a pre-assault claim.

The fact that NC State argues that this Court should uphold the dismissal of Doe's claims should not be construed to mean that either NC State or its leadership

condones sexual misconduct. Rather, to be clear, sexual misconduct of any kind is completely unacceptable, is prohibited by NC State's policies, and is in direct opposition to the mission, culture, and standards of NC State. At the same time, Doe has an obligation to set forth facts to support his claims, which he has not done.

## ARGUMENT

### Standard of Review

This Court reviews a district court's ruling on a motion to dismiss de novo. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). "A motion to dismiss tests the sufficiency of a complaint." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### Discussion

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "[S]exual harassment can constitute discrimination on the basis of sex under Title IX[.]" Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 283 (1998). The Supreme Court has recognized a private

4

cause of action under Title IX for a student who has been sexually harassed by an employee or another student of the covered institution. See generally id.; see also Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629 (1999). A plaintiff asserting a Title IX claim on the basis of sexual harassment must allege the following elements:

> (1) [He] was a student at an educational institution receiving federal funds, (2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007).

For the current matter, the District Court based its decision on the fourth element. See JA 040. This Court has established as to the fourth element that:

> An institution [such as NC State] can be held liable for a Title IX violation only if "an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in [NC State's] programs and fails adequately to respond" or displays "deliberate indifference" to discrimination.

See Jennings, 482 F.3d at 700 (emphases added) (ellipses in original) (quoting Gebser, 524 U.S. at 290). Respondeat superior or constructive notice does not satisfy this element. Gebser, 524 U.S. at 285.

5

Despite Doe's "doubts" about Murphy's behavior, Doe does not allege that he ever reported the sexual harassment to anyone at NC State. See JA 013 (alleging only that Doe reported to a friend). In fact, Doe has conceded he had no personal knowledge that NC State had notice of any alleged misconduct by Murphy until September 2022. See JA 015, JA 019, JA 023, JA 025. Rather, Doe alleges only that, based on what he read in the Locke complaint, "[i]n early 2016, Findley told Senior Associate Athletic Director Sherard Clinkscales[] that Murphy was engaging in what he suspected was sexual grooming. . . ." JA 016. Based on what Doe learned in February 2023, he also alleges that Findley and two assistant coaches "had been aware of Murphy's reportable sexual conduct towards student-athletes prior to 2016, had discussed it amongst themselves, and had not immediately reported it to Title IX staff," JA 022, and that Clinkscales "either disregarded Findley's report or concealed it," JA 033. He does not allege any other knowledge by anyone at NC State regarding Murphy's alleged misconduct or any other reports to anyone at NC State regarding Murphy's alleged misconduct before his own alleged treatment by Murphy in 2021.

As explained in more detail below, neither the alleged notice to Clinkscales nor the other coaches' alleged knowledge of suspected "grooming" behavior is sufficient to establish that an NC State official with the requisite authority had actual knowledge of discrimination. The District Court correctly reached this conclusion

in this case, <u>Locke</u>, and the other Doe case when it dismissed the actions against NC

State.  <u>See</u> JA 037–045; <u>Locke v. N.C. State Univ.</u>, No. 5:22-CV-344-FL, 2023 WL

5916455 (E.D.N.C. Sept. 11, 2023); <u>Doe v. N.C. State Univ.</u>, No. 5:23-CV-044-FL,

2023 WL 5916453 (E.D.N.C. Sept. 11, 2023).

For these reasons and those that follow, this Court should affirm the District

Court's well-reasoned dismissal.

**I.     This Court Should Affirm the District Court's Dismissal of Doe's Claim Because Doe Does Not Allege that an Official with Authority Had Actual Knowledge.**

Doe's Complaint does not establish that an official at NC State with authority

to address allegations of harassment had actual knowledge of any harassment.  In

particular, Doe fails to allege that Clinkscales or other coaches were appropriate

persons (i.e., officials with authority) for purposes of establishing actual knowledge.

Doe provides titles for the individuals, JA 016, JA 022 ("Head Soccer Coach,"

"Associate Athletic Director," "Assistant Coach"), but he does not allege that the

titles mean these individuals had authority to address harassment against Doe (or

anyone else) or to implement corrective measures to end any harassment.  <u>See</u>

<u>Jennings</u>, 482 F.3d at 700; <u>see also</u> <u>Gebser</u>, 524 U.S. at 290.

Doe now contends that "Clinkscales is an appropriate person," DE 16 at 19,

but fails to allege how or why Clinkscales is a person with "authority" for Title IX

purposes, <u>see</u> <u>Jennings</u>, 482 F.3d at 700.

A.   Neither Clinkscales nor the Coaches Were Officials with Authority to Address the Alleged Discrimination and to Institute Corrective Measures as Required by Jennings.

Doe does not establish that Clinkscales or the coaches referenced in the Complaint were appropriate officials for purposes of showing actual knowledge. The Complaint is devoid of any allegation regarding the authority of Clinkscales or other coaches to address Murphy's alleged conduct.  See id.; Gebser, 524 U.S. at 290 ("Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation . . . .  An 'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination.").  Although the Supreme Court has not specifically articulated the particular institutional officials that need to receive the actual notice, courts have consistently found that not every employee can satisfy this requirement. See, e.g., Ross v. Corp. of Mercer Univ., 506 F. Supp. 2d 1325, 1352 n.43 (M.D. Ga. 2007) ("[I]n a typical Title IX case, an appropriate individual might be a University President, a high school superintendent, or the chairman of an appropriate board of education and not a teacher, coach or employee."); Burks v. Bd. of Trs. of Fla. Agric. & Mech. Univ., 505 F. Supp. 3d 1273, 1280–81 (N.D. Fla. 2020) (holding that athletic coaches were not "appropriate person[s]" under Title IX).  Rather, "appropriate persons" are limited to individuals who have "authority to address the alleged harassment and to institute corrective measures."  Doe v. Fairfax Cnty. Sch.

Bd., 1 F.4th 257, 264 (4th Cir. 2021). While another circuit court has found that the Athletic Director of the university was an appropriate person, see, e.g., Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1294-95 (11th Cir. 2007) (where both the Athletic Director and the President knew about the harassment), the undersigned has not found any authority holding that an employee subordinate to the head Athletic Director (e.g., associate athletic director) is an appropriate person.[1]

Doe makes the conclusory allegation that the coaches were "responsible employee[s]," JA 033, but does not define "responsible employee" or allege the obligation of a responsible employee with respect to Title IX at the time the coaches

---

[1] Doe argued in the court below that the coaches referenced in the Complaint were "mandatory reporters." Doe did not allege, however, that any of the coaches had any mandatory reporting requirements. See generally JA 005–035. Moreover, even if the coaches and Clinkscales were found to be "mandatory reporters," Doe offers no support for the proposition that a mandatory reporter is "an official . . . who has authority to address the alleged discrimination and to institute corrective measures," Doe v. Fairfax Cnty. Sch. Bd., 1 F.4th 257, 264 (4th Cir. 2021), as would be required to impute Title IX liability to NC State. See, e.g., Plamp v. Mitchell Sch. Dist. No. 17-2, 565 F.3d 450, 459 (8th Cir. 2009) ("[E]ach teacher, counselor, administrator, and support-staffer in a school building has the authority, if not the duty, to report to the school administration or school board potentially discriminatory conduct. But that authority does not amount to an authority to take a corrective measure or institute remedial action within the meaning of Title IX."); Rosa H. v. San Elizario Indep. Sch. Dist., 106 F.3d 648, 661 (5th Cir. 1997) ("[M]erely reporting the abuse to superiors or to law enforcement is insufficient. Anyone can make reports. . . . In order to qualify as a supervisory employee whose knowledge of abusive conduct counts as the district's knowledge, a school official must at least serve in a position with the authority to 'repudiate that conduct and eliminate the hostile environment' on behalf of the school district." (emphasis in original) (citation omitted)).

supposedly became aware of Murphy's alleged conduct. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Legal conclusions and conclusory allegations need not be accepted as true if not supported by sufficient factual allegations. Id. (citing Twombly, 550 U.S. at 555). Moreover, "[r]esponsible employee" and "appropriate person" are not interchangeable. See, e.g., Ross v. Univ. of Tulsa, 859 F.3d 1280, 1290 (10th Cir. 2017) (rejecting the contention that the requirement that campus security officers report sexual assaults to university personnel rendered them appropriate persons for Title IX reporting).

Doe further fails to allege that Clinkscales or the coaches who were purportedly "aware" of Murphy's alleged conduct prior to 2021 had the authority to institute corrective measures against Murphy. See Moss v. Pa. State Univ., No. 4:22-CV-00529, 2023 WL 1456773, at *7 n.106 (M.D. Pa. Feb. 1, 2023) ("Although plausibly alleging that Boland is an appropriate person for Title IX purposes does not appear to be a daunting task, it is Moss's responsibility as the plaintiff."). In fact, by his own allegations, Doe essentially admits that Clinkscales and the other coaches were not "appropriate persons" with the authority to institute corrective measures: he alleges that they failed to report Murphy's alleged conduct to NC State administration or Title IX staff, thereby implying that they did not have the authority to address alleged harassment and institute corrective measures on their own. JA 022, JA 028–029, JA 033.

10

B.    <u>Doe Asks this Court to Draw Improper Inferences.</u>

On appeal, Doe tries to circumvent the deficiencies in the Complaint by claiming that two events (the change in Murphy's job duties and Findley's alleged report to Clinkscales) must be causally connected and, therefore, must lead to the conclusion that Clinkscales had authority to address alleged harassment and institute corrective measures.  <u>See</u> DE 16 at 19–20.  First, Doe makes the broad assumption that Murphy's job change in 2017 was "an exercise of corrective authority."  DE 16 at 19.  Doe then attempts to extrapolate from that assumption a conclusion that "given the connection between the report and Murphy's subsequent reassignment," Clinkscales must have possessed "corrective authority."  DE 16 at 20.

Despite Doe's strained attempt to establish otherwise, the Complaint does not allege facts supporting any connection between these two events.  In the Complaint, Doe does not allege that Murphy's job change occurred because of Clinkscales's knowledge of Findley's suspicions.  He does not allege that the job change was effectuated by the university to reduce the risk of harassment.  And he does not allege any facts or occurrences between the time Findley shared his suspicions with Clinkscales in early 2016 and the job change in August 2017 that would demonstrate a causal connection between those events.  <u>See</u> JA 016.

Instead, Doe alleges an 18-month lapse between when Findley allegedly told Clinkscales of his suspicions ("early 2016") and the change in Murphy's duties

("August 1, 2017") and at least five more months ("in 2018") before Murphy was promoted. JA 016. In other contexts (e.g., Title VII retaliation cases), this Court has found that a lapse of as little as two to four months is too long to establish a causal connection between an employee's actions and the employer's reaction. See, e.g., Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021) ("Roberts' termination—three months after his last report of harassment—did not 'closely follow' a protected activity, and thus does not present a circumstance that courts have characterized as creating a strong inference of retaliation."). Applying this Court's prior reasoning, the 18-month period here would not suffice to connect these events and give rise to the inference Doe seeks to draw.[2]

From Doe's desired (but improper) inference, Doe then jumps to the legal conclusion that Clinkscales had the requisite authority to address the alleged misconduct. See DE 16 at 19–20. However, Doe fails to allege facts consistent with his argument that Clinkscales was an appropriate person under Title IX. See generally JA 005–035. Rather, Doe jumps to the legal conclusion that Clinkscales

---

[2] While Doe wants the Court to infer that the changes in Murphy's job duties—more than a year and a half after Findley spoke to Clinkscales—mean the university was on notice of Murphy's alleged harassment, it is more logical and reasonable to infer the opposite (i.e., that the university had no notice of inappropriate conduct). The facts alleged in the Complaint include that, even after the change in job duties, the university promoted Murphy and gave him a raise several months thereafter rather than disciplining him for inappropriate conduct. JA 016.

had institutional authority by relying on an unsupported inference about Murphy's job change. To reach the conclusion that Clinkscales had the requisite authority under Title IX requires this Court to take as true a series of "unwarranted inferences" and "unreasonable conclusions." See Nemet Chevrolet, 591 F.3d at 253 (citation and quotation marks omitted); see also id. at 256 ("[T]he complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible." (quotation marks omitted) (quoting Iqbal, 556 U.S. at 683)).

Doe is not saved by his argument that, if Clinkscales is not an appropriate person, he certainly must have "told an official who is." DE 16 at 19. Although the Complaint does not allege that Clinkscales spoke to anyone regarding Murphy, see JA 016, JA 033, Doe tries to backfill this deficiency by arguing in his brief that Clinkscales must have spoken to someone, and that this unknown and unidentified person had the requisite authority to address the purported misconduct:

> [I]f Clinkscales did not possess that authority, the complaint at the very least gives rise to an inference that he told someone who did. After all, someone at the University adjusted Murphy's responsibilities after Coach Findley's report.

DE 16 at 20 (emphasis in original); see also DE 16 at 19. However, no degree of emphasis can convert conjecture to plausibility. See Twombly, 550 U.S. at 545 (holding that "[f]actual allegations must be enough to raise a right to relief above the

13

speculative level").  There are any number of reasons that an employee's job responsibilities might change over an eighteen-month period, and Doe does not allege any facts to support that the job change was because of what Findley supposedly told Clinkscales.

Doe's failure to allege that Clinkscales or the coaches were appropriate persons under Title IX warrants affirming the District Court's decision.  See Jennings, 482 F.3d at 695, 700; see also Gebser, 524 U.S. at 290.

## II. This Court Should Affirm the District Court's Dismissal of Doe's Claim Because NC State Did Not Have Actual Notice of Conduct Amounting to Harassment.

Even assuming that Clinkscales or the coaches were "appropriate persons" to receive notice under Title IX, which, for the reasons set forth above, Plaintiff has failed to allege or establish, Doe does not adequately allege that NC State had actual knowledge of the type of harassment required to state a claim under Title IX.  Rather, Doe relies on Locke's allegations in a completely separate action that NC State had actual knowledge of suspicions of "grooming," a term Doe uses without providing context or factual descriptions of what the "grooming" entailed.  See JA 016, JA 020, JA 033.

As this Court has established, a Title IX claimant puts a university on actual notice of harassment by "alleging facts that objectively amount[] to sexual harassment."  See Fairfax Cnty., 1 F.4th at 265 (emphasis added) (citing Jennings,

482 F.3d at 700–01). And district courts have stated that conduct described as "grooming" does not necessarily correspond to conduct amounting to harassment. See, e.g., Doe v. Madison Metro. Sch. Dist., No. 15-CV-570-BBC, 2017 WL 527892, at *5 (W.D. Wis. Feb. 9, 2017)[3] ("To begin with, Title IX does not prohibit 'grooming,' it prohibits sexual harassment that is so pervasive or severe that it alters the conditions of a student's education."); S.P. v. Ne. Indep. Sch. Dist., No. SA21CV0388JKPRBF, 2021 WL 3272210, at *6 (W.D. Tex. July 30, 2021) ("Any contact between an adult and a child could be grooming behavior, but that does not mean that all contact is sexual harassment under Title IX." (emphasis in original) (citation and quotation marks omitted)).

Doe has made allegations that Findley conveyed suspicions of grooming[4] to Clinkscales but has not alleged that NC State "receive[d] a report that can objectively

---

[3] For ease of reading, the complete cite with the subsequent history was removed from the text and is set forth within this footnote. Doe v. Madison Metro. Sch. Dist., No. 15-CV-570-BBC, 2017 WL 527892, at *5 (W.D. Wis. Feb. 9, 2017), aff'd sub nom. Doe No. 55 v. Madison Metro. Sch. Dist., 897 F.3d 819 (7th Cir. 2018), reh'g en banc granted, opinion vacated (Oct. 11, 2018), on reh'g en banc sub nom. C.S. v. Madison Metro. Sch. Dist., 34 F.4th 536 (7th Cir. 2022), and aff'd sub nom. C.S. v. Madison Metro. Sch. Dist., 34 F.4th 536 (7th Cir. 2022) (en banc).

[4] Doe's allegations of "grooming" that are "devoid of further factual enhancement" are not sufficient. See Iqbal, 556 U.S. at 678 (quotation marks omitted) (quoting Twombly, 550 U.S. at 557); see also Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) ("Without more factual allegations, it is impossible for a district court to assess the Johnsons' claims."); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting Twombly, 550 U.S. at 557)).

be construed as alleging sexual harassment" that would establish actual notice. See Fairfax Cnty., 1 F.4th at 265; S.P., 2021 WL 3272210, at *6 ("[W]hile grooming conduct may be a prelude to sexual harassment, such conduct of itself does not typically amount to harassment."); Gebser, 524 U.S. 291 (finding notice of improper comments made by teacher was not sufficient to put a school on notice that the teacher was in a sexual relationship with a student).

The Supreme Court's holding in Gebser further illustrates why Doe's Complaint fails. In Gebser, a high school teacher sexually abused a freshman student over a period of several months. Id. at 277–78. No one, including the student, reported the teacher's conduct to the school. Id. at 278. Eventually, a police officer caught the teacher in flagrante delicto and arrested him. Id. The student and her mother filed suit against the school, alleging, among other things, a violation of Title IX. Id. The district court entered summary judgment in favor of the school, and the plaintiffs appealed. Id. at 279. The Fifth Circuit affirmed. Id. The Supreme Court then granted certiorari. Id. at 280.

After concluding that, under Title IX, an entity receives actual knowledge through an "official . . . with authority to take corrective action to end the discrimination," the Supreme Court analyzed whether the plaintiffs could recover under that framework. Id. at 290–91. The Supreme Court noted that the school principal had received "a complaint from parents of other students charging only that

[the teacher] had made inappropriate comments during class[.]" Id. at 291. This was the only information the school had with respect to the teacher, "which was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student." Id. Accordingly, the Supreme Court affirmed the Fifth Circuit. Id. at 293.

In Gebser, complaints that a teacher made inappropriate comments were not sufficient to provide notice of a sexual relationship. Likewise, Doe's allegation, relying on Locke's allegation, of a single statement by Findley to Clinkscales "that Murphy was engaging in what [Findley] suspected was sexual grooming of male student-athletes" is not enough to provide notice of harassment.[5] JA 016. This allegation is "plainly insufficient to alert [NC State] to the possibility that [Murphy] was involved in . . . sexual" harassment of Doe (or anyone else) in 2021. See Gebser, 524 U.S. at 291.

---

[5] In his brief, Doe repeatedly refers to a "report" Findley purportedly shared with Clinkscales regarding Murphy. See DE 16 at 2–3, 11–12, 14, 16, 19–24, 26, 29; see also JA 025–026, JA 032–034. To the extent Doe intends to give the impression that a formal write-up was provided by Findley to Clinkscales, he is recasting the allegations in the Complaint. In the Complaint, Doe alleged that "Findley told . . . Clinkscales[] that Murphy was engaging in what he suspected was sexual grooming of male student-athletes," JA 016, using words that paint a different picture than Doe's persistent use of the word "report" on appeal. Compare JA 016 and JA 020 ("[Findley] said he told . . . Clinkscales about Murphy's grooming behavior[.]") with Report, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/report (defining "report" as "a usually detailed account or statement").

Fairfax County, cited by Doe, also demonstrates why Doe's Complaint is deficient. In Fairfax County, this Court stated that although a school need not know the identity of the plaintiff, "the plaintiff ha[s] to show that the school was aware of an allegation that the [perpetrator] [i]s currently abusing a student." See 1 F.4th at 265 (emphasis in original) Jennings, 482 F.3d at 700; see also Koon v. North Carolina, 50 F.4th 398, 407 (4th Cir. 2022) ("So deliberate indifference here requires that Koon prove that some North Carolina official with the authority to address his problem both had knowledge of his federally protected rights and nonetheless failed to help him."); cf. Facchetti v. Bridgewater Coll., 175 F. Supp. 3d 627, 639 (W.D. Va. 2016) ("In the Fourth Circuit . . . there is a requirement that the defendant have actual notice of harassment against the plaintiff.").

Applying the analysis from these cases to the facts presented in the current case, Doe fails to state a claim. Even assuming that a person with authority was aware of the statement that Doe alleges Findley made to Clinkscales, which, as explained above, is not the case, knowledge in 2016 of suspicions of "grooming" does not establish that NC State had actual notice that Murphy was harassing students in 2021. See Fairfax Cnty., 1 F.4th at 265.

Just as the District Court found, see generally JA 037–044, Doe's failure to allege that NC State had actual knowledge of alleged harassment requires dismissal of Doe's claim. See Jennings, 482 F.3d at 695; see also Gebser, 524 U.S. at 291.

18

## III.    Doe Has Not Adequately Alleged a Pre-Assault Claim

On appeal, Doe distinguishes between what he terms a "post-assault" case, in which a defendant is alleged to have responded with deliberate indifference to harassment, and a "pre-assault" case, in which the defendant fails to prevent the plaintiff from being harassed in the first place.  Doe has not alleged facts consistent with liability under the pre-assault theory.  As the District Court properly found, regardless of whether the claim arises because of the institution's knowledge before or after the alleged assault at issue, whether the institution had knowledge is dispositive.  JA 040; see also Jennings, 482 F.3d at 695.

In Fairfax County, this Court said that "an educational institution could be liable under Title IX not only where its deliberate indifference '"cause[s] [students] to undergo" harassment,' but also where such indifference 'makes them liable or vulnerable' to harassment."  1 F.4th at 273 (alterations in original) (quoting Davis, 526 U.S. at 645); see also Doe v. Charlotte Mecklenburg Bd. of Educ., No. 3:18-cv-00586-RJC-DSC, 2023 WL 1074104, at *2 (W.D.N.C. Jan. 26, 2023) (holding that the pre-harassment theory of liability is "consistent with the two-pronged framework of actual notice and deliberate indifference that governs private suits brought under Title IX"), appeal docketed, No. 23-1182 (4th Cir. Feb. 21, 2023).  As discussed in Sections I and II, supra, NC State had no knowledge of any acts of harassment.  NC State cannot be indifferent to what it does not know.  See Doe ex rel. Doe #2 v.

19

Metro. Gov't of Nashville & Davidson Cnty., 35 F.4th 459, 466 (6th Cir. 2022)
("[I]n a successful 'before' claim, a school's deliberate indifference to <u>known past
acts</u> of sexual misconduct must have caused the misconduct that the student currently
alleges." (emphasis added)), <u>cert. denied sub nom.</u> <u>Metro. Gov't of Nashville &
Davidson Cnty. v. Doe,</u> ___ U.S. ___, 143 S. Ct. 574 (2023); <u>K.C. ex rel. T.C. v.
Marshall Cnty. Bd. of Educ.,</u> 762 F. App'x 226, 232 (6th Cir. 2019) ("[T]he Board
cannot be liable for deliberate indifference for acts about which it had no
knowledge.").[6]

Doe cites <u>Doe v. School Board of Broward County,</u> 604 F.3d 1248, 1257–58
(11th Cir. 2010) and <u>Baynard v. Malone,</u> 268 F.3d 228, 238 n.9 (4th Cir. 2001) in
support of his claim. <u>See</u> DE 16 at 18. However, an examination of these cases
shows that these holdings do not support Doe's argument.

While this Court held in <u>Baynard</u> that an institution may still have actual
knowledge "even without any indication of which student was being abused," 268
F.3d at 238 n.9, in <u>Fairfax County,</u> this Court explained <u>Baynard</u>'s holding by

---

[6] Further, Doe's pre-assault argument is undermined by his own allegations
that NC State reacted to Locke's report of harassment by conducting a Title IX
investigation. <u>See, e.g.,</u> JA 016 ("In the spring of 2022, nine witnesses were
interviewed by NCSU in a Title IX investigation into Locke's reported sexual
abuse . . . ."); JA 019 ("Locke received a 'Notice of Investigative Finding' letter
from the NCSU . . . ."). Doe's allegations indicate that, had it known of the alleged
harassment against Doe, NC State had policies in place that would have resulted in
a Title IX investigation. <u>See</u> JA 016, JA 019–020.

stating: "[T]o establish [actual] notice, the plaintiff had to show that the school was aware of an allegation that the teacher was <u>currently</u> abusing a student—although the school did not need to know the identity of the student allegedly being abused." 1 F.4th at 265 (emphasis in original). Doe cannot show that NC State knew that Murphy inappropriately touched any student at the time Doe alleges he was subjected to inappropriate touching. He has not alleged that an official with authority had knowledge, and he has not alleged conduct that rises to the level of abuse (or harassment). <u>See</u> sections I, II, <u>supra</u>.

Doe v. School Board of Broward County, an Eleventh Circuit opinion cited by Doe to support his pre-assault argument, underscores this point. <u>Broward County</u> involved a high school student assaulted by a teacher whose acts of harassment had been reported previously by two other students – "K.F." and "S.W." <u>See</u> 604 F.3d at 1250–53. In October 2004, less than three years before the assault at issue, K.F. reported three detailed incidents of harassment by the same teacher to the school principal and filed a complaint with the school. <u>Id.</u> at 1250–51. In May 2005, approximately two years prior to the assault at issue, S.W. filed a complaint with the school "regarding two incidents of sexual harassment," again with detail, by the same teacher. <u>Id.</u> at 1252. The Eleventh Circuit found that "the harassment alleged in the K.F. and S.W. complaints, which resembled [the plaintiff]'s assault in significant respects . . . could provide actual notice to the School Board" for

summary judgment purposes. Id. at 1259. "The K.F. and S.W. complaints, when viewed collectively, provided actual notice to [the school principal] of a pattern of sexual harassment and a series of related allegations occurring over a period of nine months in [the teacher]'s math classroom." Id. Conversely, Doe alleges a single report to Clinkscales of suspicions of grooming without any details regarding what that grooming entailed; Doe does not allege a "pattern" of allegations of sexual harassment—much less ones that "resembled in significant respects" the misconduct that he alleges—that was previously brought to the attention of the head of the school.

To the extent Doe attempts to support his pre-assault argument by citing to Koon v. North Carolina, such reliance is misplaced. In Koon, which arose in the context of an Americans with Disabilities Act claim, this Court adopted the Title IX framework, cited Jennings, and required the plaintiff to "prove that some North Carolina official with the authority to address his problem both had knowledge of his federally protected rights and nonetheless failed to help him." See 50 F.4th at 407. Though this Court stated that knowledge can also be shown "by circumstantial evidence," that does not relax the requirement to show actual knowledge. Id. Rather, it is tantamount to actual knowledge; as this Court explained, it "look[s] to whether [the risk] was so obvious they must have known, instead of whether it was so obvious they should have known." Id. (emphasis in original). In this Court's own

words, "it's a high bar." Id.  Here, Doe fails to allege that there was a risk "so obvious" that NC State "must have known."  Doe only alleges that (at most) NC State was aware of suspicions of "grooming" rather than harassment, see section II, supra, and there was no indication or knowledge that Murphy was engaging in harassing behavior against students in 2021, see sections I, II, supra.

Applying the pre-assault analysis of other circuits, see, e.g., Karasek v. Regents of Univ. of Cal., 956 F.3d 1093 (9th Cir. 2020) (citing Simpson v. Univ. of Colo. Boulder, 500 F.3d 1170 (10th Cir. 2007)), further demonstrates that Doe fails to state a claim.  Under the Ninth Circuit standard, to survive a motion to dismiss, a pre-assault claimant must still allege that "a school maintained a policy of deliberate indifference to reports of sexual misconduct."  Id. at 1112.  In Simpson, the university in question "was aware of prior complaints of sexual misconduct," "had a history of responding with deliberate indifference to reports of sexual assaults," and had even "been warned by the district attorney that [it] needed to . . . implement sexual assault prevention training."  Id. at 1112–13 (citing Simpson, 500 F.3d at 1173–75, 1177, 1179–84).  In Karasek, the complaint alleged that the university mishandled most of the Title IX complaints it received; in other words, the university knew that harassment was afoot and mishandled the reports thereof.  See id. at 1113 ("[O]ver a five-year period, UC 'resolved 76 percent of Title IX complaints from students using the early resolution process' in a generally inadequate manner.").

23

Unlike in <u>Karasek</u> and <u>Simpson</u>, NC State had no knowledge of any acts of harassment, and deliberate indifference requires knowledge. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994) (holding in the Eighth Amendment context that deliberate indifference requires that the official knows of and disregards the risk and "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). As the District Court correctly held, Doe's Complaint falls short of meeting the necessary requirements to state a claim for relief under Title IX.

## **<u>CONCLUSION</u>**

For the reasons set forth above, NC State respectfully asks this Court to affirm the District Court's dismissal of Doe's Complaint for failure to state a claim upon which relief can be granted.

This the 4th day of March, 2024.

ELLIS & WINTERS LLP

/s/ Alex J. Hagan
Alex J. Hagan
N.C. State Bar No. 19037

Dixie T. Wells
N.C. Bar No. 26816

Jeremy M. Falcone
N.C. Bar No. 36182

*Counsel for Appellee*

24

## CERTIFICATE OF COMPLIANCE

1.  This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    This document contains <u>6,236</u> words.

2.  This document complies with the typeface requirements because:

    This document has been prepared in a proportional spaced typeface using Microsoft Word in <u>14-point Times New Roman</u>.

Dated: March 4, 2024

<u>/s/ Alex J. Hagan</u>
Alex J. Hagan
N.C. State Bar No. 19037
ELLIS & WINTERS LLP
alex.hagan@elliswinters.com
Post Office Box 33550
Raleigh, NC 27636
Tel: (919) 865-7000
Fax: (919) 865-7010

Dixie T. Wells
N.C. Bar No. 26816
dixie.wells@elliswinters.com
Jeremy M. Falcone
N.C. Bar No. 36182
jeremy.falcone@elliswinters.com
ELLIS & WINTERS LLP
Post Office Box 2752
Greensboro, NC 27402
Tel: (336) 217-4193
Fax: (336) 217-4198

*Counsel for Appellee*
