**No. 23-2073**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN DOE 2,
*Plaintiff-Appellant,*

v.

NORTH CAROLINA STATE UNIVERSITY,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of North Carolina
Case No. 5:23-cv-216
The Honorable Louise W. Flanagan

### REPLY BRIEF OF PLAINTIFF-APPELLANT JOHN DOE 2

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Kerstin W. Sutton
KERSTIN WALKER SUTTON PLLC
3215 Deerchase Wynd
Durham, NC 27712
(919) 698-9555
kws@kwsutton.com

Alexandra Z. Brodsky
Adele P. Kimmel
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................. i

TABLE OF AUTHORITIES...................................................... ii

INTRODUCTION..................................................................... 1

ARGUMENT............................................................................ 3

I.    John plausibly alleged that Senior Associate Athletic Director
      Clinkscales was an appropriate person .......................... 3

II.   Coach Findley's report of "sexual grooming" provided the
      University actual notice .................................................. 10

CONCLUSION ......................................................................... 18

CERTIFICATE OF COMPLIANCE ........................................ 20

CERTIFICATE OF SERVICE ................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) .................................................. 6

*Baynard v. Malone*,
  268 F.3d 228 (4th Cir. 2001) ........................................... 15, 16

*Burks v. Bd. of Trs. of Fla. Agric. & Mech. Univ.*,
  505 F. Supp. 3d 1273 (N.D. Fla. 2020) ................................. 9

*Colbert v. Univ. of S. Ala.*,
  No. CV 22-00184, 2024 WL 796548
  (S.D. Ala. Feb. 6, 2024) ........................................................ 8

*Doe v. Fairfax Cnty. Sch. Bd.*,
  1 F.4th 257 (4th Cir. 2021) ................................. 3, 9, 11, 16

*Doe v. Madison Metro. Sch. Dist.*,
  No. 15-CV-570, 2017 WL 527892
  (W.D. Wis. Feb. 9, 2017) ................................................... 14

*Doe v. Sch. Bd. of Broward Cnty.*,
  604 F.3d 1248 (11th Cir. 2010) .............................. 14, 15, 16

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
  637 F.3d 435 (4th Cir. 2011) ............................................. 5, 6

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) ....................................................... 12, 17

*Grabowski v. Ariz. Bd. of Regents*,
  69 F.4th 1110 (9th Cir. 2023) ............................................... 8

*Kesterson v. Kent State Univ.*,
  967 F.3d 519 (6th Cir. 2020) ................................................ 9

*Kinsman v. Fla. State Univ. Bd. of Trs.*,
   No. 4:15CV235, 2015 WL 11110848
   (N.D. Fla. Aug. 12, 2015) ...................................................... 8

*Koon v. North Carolina*,
   50 F.4th 398 (4th Cir. 2022) ............................................... 14

*Murrell v. Sch. Dist. No. 1, Denver*,
   186 F.3d 1238 (10th Cir. 1999) ............................................ 9

*Payne v. Taslimi*,
   998 F.3d 648 (4th Cir. 2021) ............................................... 16

*Roohbakhsh v. Bd. of Trs. of Neb. State Colls.*,
   409 F. Supp. 3d 719 (D. Neb. 2019) ..................................... 9

*S.M. v. Sealy Indep. Sch. Dist.*,
   No. CV H-20-705, 2021 WL 1599388
   (S.D. Tex. Apr. 23, 2021) ...................................................... 9

*S.P. v. Ne. Indep. Sch. Dist.*,
   No. SA-21-CV-0388, 2021 WL 3272210
   (W.D. Tex. July 30, 2021) .............................................. 13, 14

*Simpson v. Univ. of Colo. Boulder*,
   500 F.3d 1170 (10th Cir. 2007) .......................................... 17

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ............................................... 6

## Regulations

34 C.F.R. § 106.30(a) (2020) ...................................................... 11

34 C.F.R. § 106.45(b)(7)(i) (2020) ............................................... 7

## INTRODUCTION

North Carolina State University's argument boils down to two propositions. The first is that, as a matter of law, no one on its staff who received Coach Kelly Findley's report about Rob Murphy could be an "appropriate person" for the purposes of Title IX. The second is that a report that an athletic trainer was "engaging in . . . sexual grooming of male student-athletes" could not provide actual notice of an obvious ongoing risk of sexual abuse. The University is wrong on both points.

First, John Doe 2 plausibly alleged that Senior Associate Athletic Director Sherard Clinkscales was an appropriate person or passed along the report to someone who was. The University does not address John's argument that the close fit between the report Clinkscales received and Murphy's subsequent reassignment gives rise to the inference that Clinkscales, or someone else to whom he referred the report, had the authority to engage in corrective action. Instead, the University asks this Court to draw inferences in its favor, rather than John's, which is foreclosed on a motion to dismiss. And contrary to the University's telling, other courts have recognized that officials similar to or more junior than Clinkscales may be appropriate persons.

1

Second, as John explained in his brief, Coach Findley's report was sufficient to put the school on actual notice. A report of "sexual grooming," viewed in the light most favorable to John, is a report of sexual harassment—an argument the University ignores. And, at the least, the report makes the risk to federal rights so obvious that the University must have known of that threat. The University defies both common sense and the federal pleading standard when it asserts that a report of ongoing "sexual grooming" of multiple student-athletes does not make the risk sufficiently clear. And the cases the University cites demonstrate only that some reports provide schools with actual notice and some do not—an uncontroversial point that does not explain why John's case should be dismissed.

For these reasons, in addition to the reasons in the opening brief, this Court should reverse and remand for discovery.

## ARGUMENT

## I.  John plausibly alleged that Senior Associate Athletic Director Clinkscales was an appropriate person.

1. For purposes of Title IX, an "appropriate person" whose knowledge can be attributed to the school is an "official who has authority to address the alleged harassment and to institute corrective measures." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 264 (4th Cir. 2021). As discussed in John's opening brief, the complaint gives rise to a plausible inference that Senior Associate Athletic Director Sherard Clinkscales was such an appropriate person, or that he passed along Coach Findley's report to someone who was. Opening Br. at 19-20, 28-29. After all, following Coach Findley's report, the University reassigned Murphy, reducing his contact with the student-athletes whom Coach Findley believed he was "sexual[ly] grooming." JA 16; *see* Opening Br. at 19-20, 28-29.[1]

The University does not engage with John's arguments. It has no answer to John's explanation that the "fit between Coach Findley's allegation and the University's action gives rise to an inference that the

---

[1] Although the University's brief devotes space to arguing its coaches were not appropriate persons, John did not argue in his opening brief that they were. *See generally* Opening Br.

latter was motivated by the former, bolstering the plausibility of John's allegations that the University understood that Murphy posed a danger to male student-athletes." Opening Br. at 29. Instead, the University asserts the time delay between Coach Findley's report and Murphy's reassignment forecloses any inference of causal relationship. Response Br. at 11-12. But, in doing so, the University ignores John's explanation for why, in the university context, a delay between a complaint of sexual harassment and an institutional response is ordinary. *See* Opening Br. at 29.

Instead, the University points this Court to an inapposite summary judgment opinion on workplace retaliation. Response Br. at 12 (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021)). There, a worker complained about sexual harassment; three months later, the company's CEO fired him, citing safety concerns. *Id.* at 115-16. Discovery revealed that, at the time of the termination, the CEO did not know about the worker's harassment complaints. *Id.* at 116 & n.1, 125-26. Nonetheless, the worker argued his complaints were the reason for his termination. *Id.* at 116. On summary judgment, this Court held that the three-month temporal link between the complaints and termination

did not, on its own, create a fact dispute as to causation. *Id.* at 127. That rule is not instructive in this appeal—about a different kind of claim at a different procedural posture—where John has not premised his argument solely on temporal proximity.

2. Throughout, the University premises its position on a misunderstanding of the pleading standard. For example, the University characterizes John's task as proving the "two events (the change in Murphy's job duties and Findley's alleged report to Clinkscales) *must* be causally connected" and "Clinkscales *must* have possessed 'corrective authority.'" Response Br. at 11 (emphasis added). Later, the University insists that its preferred inference from the delay in Murphy's reassignment—that the school lacked actual notice—is "more logical and reasonable" than John's. *Id.* at 12 n.2.

But, to survive a motion to dismiss, a plaintiff does not need to plead facts that, if true, would prove he "must" be right—only that he may be. *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011) (explaining "a complaint . . . must contain sufficient facts to state a claim that is 'plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Nor does the plaintiff's inference

5

need to be the only, or most likely, inference available. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on . . . a motion [to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (explaining that, on a motion to dismiss, courts do not "decide whose version . . . is more likely" or "allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences"). Instead, this Court "draw[s] all reasonable inferences in favor of the plaintiff" to determine whether the complaint plausibly states a claim. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

So take, for example, the University's argument that John "impl[ies]" Clinkscales was not an appropriate person by pleading that Clinkscales may not have reported Murphy to the University's Title IX office and other administrators. Response Br. at 10. The University does not spell out its logic. But it appears to ask the Court to infer that Clinkscales' possible decision not to tell certain administrators about

Murphy means he was supposed to tell them, and if he was supposed to tell them, that must mean he lacked authority to act on his own. *See id.* The inferential chain is shaky, and the same allegations are susceptible to other explanations. For example, Clinkscales might have decided not to report to other offices because he was confident he had the power to fix the problem himself. Perhaps the University required employees to alert a central Title IX office to potential sexual harassment without depriving those employees of their own authority to take corrective action—authority that Clinkscales or a colleague plausibly appear to have exercised to take some action on Coach Findley's report, *see* Opening Br. at 19-20, 28-29. At this stage, the University's preferred "impl[ication]" is unavailable, since it would require drawing inferences in the University's favor, rather than John's.[2]

3. The University also suggests that Clinkscales could not have been an appropriate person because it has "not found any authority

---

[2] To the extent the University assumes an appropriate person must be able to single-handedly remedy reported sexual harassment, that is wrong. Within a university, no single official can effectuate a comprehensive response on his own. *See, e.g.*, 34 C.F.R. § 106.45(b)(7)(i) (2020) (mandating that, for school sexual harassment complaints, disciplinary "decision-maker(s) . . . cannot be the same person(s) as the Title IX

7

holding than an employee subordinate to the head Athletic Director (e.g., associate athletic director) is an appropriate person." Response Br. at 9. But John has.

The Ninth Circuit, for example, has held that reports of sex-based harassment to team coaches, many rungs down the ladder from an athletic director, sufficed to provide a university with actual knowledge. *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1120 (9th Cir. 2023). A district court in Alabama recently held, on a motion to dismiss, that "[w]hile it may turn out otherwise, it is certainly a reasonable inference that an . . . assistant athletic director at a university"—a role more junior than *Senior* Associate Athletic Director Clinkscales' role—"has the authority to take corrective action to end harassment by one of the university's [staff members] against one of its students." *Colbert v. Univ. of S. Ala.*, No. CV 22-00184, 2024 WL 796548, at *6 (S.D. Ala. Feb. 6, 2024) (footnote omitted), *report and recommendation adopted,* No. CV 1:22-00184, 2024 WL 780715 (S.D. Ala. Feb. 26, 2024). And those are just two examples. *See, e.g.*, *Kinsman v. Fla. State Univ. Bd. of Trs.*, No.

---

Coordinator or the investigator(s)"). But that does not mean no employee is an appropriate person. *See supra* Part I.3 (collecting cases).

4:15CV235, 2015 WL 11110848, at *2 (N.D. Fla. Aug. 12, 2015) (holding that an "associate athletics director" and a "head football coach" may be appropriate persons); *Burks v. Bd. of Trs. of Fla. Agric. & Mech. Univ.*, 505 F. Supp. 3d 1273, 1281 (N.D. Fla. 2020) (holding reports to a deputy athletic director provided actual notice); *S.M. v. Sealy Indep. Sch. Dist.*, No. CV H-20-705, 2021 WL 1599388, at *5 (S.D. Tex. Apr. 23, 2021) (holding coaches were plausibly appropriate persons); *Roohbakhsh v. Bd. of Trs. of Neb. State Colls.*, 409 F. Supp. 3d 719, 735 (D. Neb. 2019) (same).

And, outside the athletics context, this Court and others have made clear that mid-level administrators, not only apex officials, may be appropriate persons. *See, e.g.*, *Fairfax*, 1 F.4th at 269 (observing that reports to assistant principals and a school counselor provided actual notice); *Kesterson v. Kent State Univ.*, 967 F.3d 519, 528 (6th Cir. 2020) (holding a "*deputy* Title IX coordinator" was an appropriate person (emphasis added)); *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1248 (10th Cir. 1999) (explaining teachers may be appropriate persons).

Besides, a school official's authority to address harassment does not depend on what he is called, but rather on what he can do. *Murrell*, 186 F.3d at 1247. Here, the complaint alleges that Clinkscales, or someone to

9

whom he reported, had corrective authority to address the harassment. *See* Opening Br. at 19-20, 28-29.

## II. Coach Findley's report of "sexual grooming" provided the University actual notice.

The University also argues that Coach Findley's report to Clinkscales that Murphy was engaged in "sexual grooming" of student-athletes was insufficient to provide actual notice. In doing so, the University again ignores John's arguments, demands inferences in its favor, and analogizes to inapt case law.

1. In his opening brief, John explained that, viewed in the light most favorable to him, Coach Findley's report constituted a report of sexual harassment. Opening Br. at 20-22. After all, a report of "sexual grooming" by an authority figure is a report of "predatory sexual conduct." *See id.* at 22. The University does not address this argument. In passing, it asserts that John has not pleaded that the University "knew that Murphy inappropriately touched any student at the time [John] alleges he was subjected to inappropriate touching." Response Br. at 21. But, even if a report of "sexual grooming" is not a report of "inappropriate touching,"

"inappropriate touching" is not the only conduct that constitutes sexual harassment. *See, e.g.*, 34 C.F.R. § 106.30(a) (2020).

The University also faults John for "us[ing]" the "term" "grooming . . . without providing context or factual descriptions of what the 'grooming' entailed." Response Br. at 14. The University's reasoning is opaque. John's complaint provides detailed allegations regarding the abuse he suffered at the University. JA 12-14 (Compl. ¶¶ 26-48). "Sexual grooming" is the term Coach Findley used to communicate his concerns to Clinkscales. JA 16 (Compl. ¶ 55). And that term communicates ongoing or imminent sexual abuse. Opening Br. at 20-22.[3]

2. In the alternative, John argued that "[e]ven if . . . Coach Findley's report did not, on its face, allege sexual harassment, the report still sufficed to provide the University actual notice" because the "report made

---

[3] The University suggests in a footnote, without explanation, that Coach Findley's report of "grooming" is too conclusory to satisfy *Iqbal*, as though school staff members' reports of sexual harassment were subject to federal pleading standards. *See* Response Br. at 15 n.4. The University also repeatedly emphasizes that Coach Findley reported "suspicions" of Murphy's misconduct without explaining the import attached to the term. *See, e.g.*, Response Br. at 14 (asserting John "relies on . . . allegations . . . that [the University] had actual knowledge of *suspicions* of grooming"). As this Court has held, a school does not need to confirm abuse occurred to have actual notice of it. *Fairfax*, 1 F.4th at 267-68.

the 'dangers to federal rights' . . . 'so "obvious"' that Clinkscales, and anyone else to whom he passed along the report, 'must have had knowledge.'" Opening Br. at 22 (internal citation omitted). The University now contends that a report of "sexual grooming" of students by a medical authority figure did not communicate "a risk 'so obvious' that [the University] 'must have known'" of the danger. Response Br. at 23.

That flies in the face of common sense—and the federal pleading standard. A "report that abuse has already occurred or that a person is 'prepar[ing] the [victim] for [abusive] sexual activity'" plausibly communicates an obvious risk of sexual abuse. Opening Br. at 22 (quoting *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012)). *Perhaps* the University will be able to convince a jury otherwise. But, at this early stage, viewing the evidence in the light most favorable to John, the complaint alleges that the University must have known of the risk Murphy posed. Indeed, it alleges that University officials "actually dr[ew] the damning inference." Opening Br. 22.

The University relies on *Gebser v. Lago Vista Independent School District*, where a school lacked actual notice. 524 U.S. 274, 291 (1998). But the report at issue in that case is too dissimilar from Coach Findley's

to be instructive. In *Gebser*, a school learned that a teacher was making "inappropriate comments" in class, but that was insufficient to provide actual knowledge that he was sexually abusing a student. *Id.* at 291. There, the reported conduct might have prompted officials to dig further, but did not communicate an obvious risk of the teacher's different, far more ambiguous misconduct. That is textbook constructive notice. Indeed, the plaintiffs "d[id] not contend they c[ould] prevail under an actual notice standard." *Id.* at 291. By contrast, in this case, Coach Findley's report, viewed in the light most favorable to John, directly communicated to the University that Murphy was either already sexually abusing students or was planning to do so. Opening Br. 20-24.

The University also cites two out-of-circuit district court opinions that, it says, hold that reports of grooming cannot provide actual notice. Response Br. at 15. That is wrong. In neither case did a school receive a report that a teacher was engaged in "grooming." Rather, the schools knew about non-sexual conduct—a teacher hugging a student, or spending time alone with her in a classroom—that the plaintiffs only characterized as grooming later, in the course of litigation. *See S.P. v. Ne. Indep. Sch. Dist.*, No. SA-21-CV-0388, 2021 WL 3272210, at *6 (W.D. Tex. July

30, 2021); *Doe v. Madison Metro. Sch. Dist.*, No. 15-CV-570, 2017 WL
527892, at *5 (W.D. Wis. Feb. 9, 2017), *aff'd sub nom. C.S. v. Madison
Metro. Sch. Dist.*, 34 F.4th 536 (7th Cir. 2022). With the benefit of hind-
sight, anyone would wish the schools had inferred that these intimacies
might escalate into something more sinister. However, as in *Gebser*, the
known conduct did not make the risk of sexual abuse "so obvious [the
schools] *must* have known," *Koon v. North Carolina*, 50 F.4th 398, 407
(4th Cir. 2022). Indeed, the teachers' behavior in those cases did "not even
raise any red flags," *S.P.*, 2021 WL 3272210, at *6; *see Doe*, 2017 WL
527892, at *6 (noting the known conduct, a hug, was not "even inappro-
priate"). Those facts stand in sharp contrast to this case, where the Uni-
versity received an explicit report of "sexual grooming," which, on its face,
warns of sexual abuse, no inference or hindsight required.

That explicit report is much more like those at issue in *Doe v. School
Board of Broward County*, 604 F.3d 1248 (11th Cir. 2010), which the Uni-
versity attempts to distinguish on factual grounds, Response Br. at 21-
22. Both here and there, the defendant-schools had actual notice because
they were warned of a school staff member's sexual conduct toward

14

multiple students, and those warnings made obvious the threat of sexual abuse the staff member posed. *See Broward*, 604 F.3d at 1257-59.

3. The University also contends, in passing, that Coach Findley's 2016 report was too distant in time from Murphy's abuse of John in 2021 to constitute actual notice of sexual harassment. Response Br. at 18. The University once again fails to respond to John's relevant arguments in his opening brief. *See* Opening Br. at 25-28.

In *Baynard v. Malone*, this Court held that a school did not have actual notice of ongoing abuse when it received a report from a former student that, "some 15 years earlier," a teacher had abused him. 268 F.3d 228, 233 (4th Cir. 2001); *see also id.* at 237-38. In a footnote, the Court acknowledged that the defendant-school could have actual notice under other circumstances, including (but not only) if the school learned the teacher "was currently abusing one of his students, even without any indication of which student was being abused." *Id.* at 238 n.9. Nothing in *Baynard* forecloses actual notice where, as here, a school receives a report that a staff member is currently "engaging in . . . sexual grooming of male student-athletes," JA 16 (Compl. ¶ 55), responds with deliberate indifference, and so permits the staff member to abuse other students—including

15

the plaintiff, just five years later. *See Baynard*, 268 F.3d at 238 n.9; *see also Broward*, 604 F.3d at 1250-52, 1258-59 (holding school had actual notice based on reports of teacher's harassment during previous years, rejecting defendant's argument that too much time had lapsed); Opening Br. at 25-28 (discussing *Baynard*).

The University relies on *Fairfax*'s later summary of *Baynard*, but to no avail. *See* Response Br. at 20-21. According to the University, *Fairfax* interpreted *Baynard* to require an allegation of "*current*[]" abuse. *Id.* (quoting *Fairfax*, 1 F.4th at 265). Coach Findley's report meets that standard because he reported ongoing, not past, "sexual grooming." *See* JA 16 (Compl. ¶ 55). Regardless, *Baynard* requires no such thing: It observed that a hypothetical report of "current[] abus[e]" would have been sufficient, not that it was necessary. *See Baynard*, 268 F.3d at 238 n.9. Moreover, the *Fairfax* language on which the University relies is non-precedential dicta because *Fairfax* did not present the question of how recent a report must be to establish a pre-assault claim: That post-assault case turned on the relevant reports' contents, not their timing. *See Fairfax*, 1 F.4th at 264-70; *see also Payne v. Taslimi*, 998 F.3d 648, 655

(4th Cir. 2021) ("If necessary to the outcome, a precedent's reasoning must be followed; otherwise, we are not so bound.").

4. In the final section of its brief, the University discusses two appellate decisions about Title IX claims predicated on a university's official policy of deliberate indifference to sexual harassment. *See* Response Br. at 23-24 (citing *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020) and *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007)). In doing so, the University conflates these "official policy" claims—which contend a school's general policies or practices increased the risk of harassment broadly—with traditional pre-assault claims, like John's, where the plaintiff alleges that a school had actual knowledge of the risk of sexual abuse posed by a specific harasser. *See Gebser*, 524 U.S. at 290 (explaining the elements of a traditional Title IX claim do not apply to cases that "involve official policy of the recipient entity"); *Simpson* 500 F.3d at 1176-78 (same). But, regardless, those cases say nothing about the meaning of actual notice other than confirming the

uncontroversial point that a report of sexual harassment provides actual notice. *See* Response Br. at 23.

## CONCLUSION

For the reasons explained above, in addition to the reasons discussed in the opening brief, the Court should reverse the judgment below and remand for further proceedings.

April 12, 2024            Respectfully submitted,

/s/ *Jim Davy*
Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Alexandra Z. Brodsky
Adele P. Kimmel
PUBLIC JUSTICE
1620 L Street NW
Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net

Kerstin W. Sutton
KERSTIN WALKER SUTTON PLLC
3215 Deerchase Wynd
Durham, NC 27712
(919) 698-9555
kws@kwsutton.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 3,571 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font.

Dated: April 12, 2024                */s/ Jim Davy*
                                     Jim Davy
                                     Counsel for Plaintiff-Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2024, I electronically filed the foregoing reply brief of plaintiff-appellant with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

Dated: April 12, 2024          */s/ Jim Davy*
                               Jim Davy
                               Counsel for Plaintiff-Appellant

21