**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-2073

JOHN DOE 2,

        Plaintiff − Appellant,

    v.

NORTH CAROLINA STATE UNIVERSITY,

        Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:23−cv−00216−FL)

Argued: September 10, 2024                                                Decided: January 7, 2025

Before DIAZ, Chief Judge, and WYNN and THACKER, Circuit Judges.

Vacated and remanded by published opinion. Chief Judge Diaz wrote the opinion, in which Judge Wynn and Judge Thacker joined.

**ARGUED:** James Patrick Davy, ALL RISE TRIAL & APPELLATE, Philadelphia, Pennsylvania, for Appellant. Dixie Thomas Wells, ELLIS & WINTERS, LLP, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Kerstin W. Sutton, KERSTIN WALKER SUTTON PLLC, Durham, North Carolina; Alexandra Z. Brodsky, Adele P. Kimmel, PUBLIC JUSTICE, Washington, D.C., for Appellant.

DIAZ, Chief Judge:

John Doe[1] was a student athlete at North Carolina State University. He alleges that, while attending the university, he was sexually abused by then–Director of Sports Medicine Robert Murphy under the guise of medical treatment. Doe filed a Title IX suit, further alleging that the university was deliberately indifferent to prior complaints of Murphy's sexual misconduct. The district court dismissed Doe's complaint because it found that he failed to plead facts that would support an inference that the university had actual notice of Murphy's sexual harassment.

On appeal, Doe argues that the district court erred in deciding that a report of "sexual grooming" could not provide actual notice to the university. We agree and thus vacate the judgment. But because the district court assumed without deciding that Doe adequately pleaded that the report was made to an official with the requisite authority for Title IX purposes, we remand for the district court to consider the issue in the first instance.

I.

A.

As we're reviewing the district court's dismissal of Doe's complaint, we "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of [Doe]."

---

[1] The complaint refers to Plaintiff as John Doe 2 because another student athlete filed an earlier lawsuit against the university using the fictitious name John Doe to protect his identity. As John Doe 2 is the only John Doe before us, we refer to him as Doe.

2

*Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019).  Accordingly, we describe the facts as alleged in Doe's complaint.

Doe was a student athlete at North Carolina State University from 2020 to 2021. Robert Murphy then served as the university's Director of Sports Medicine and was a licensed athletic trainer.  Murphy oversaw "day-to-day athletic training, medical services operations, and sports medicine facility management" for the university's twenty-three sports teams.  J.A. 11.  He could also dictate "when or whether [Doe] was allowed to compete based on his assessment of [Doe]'s health, injuries, and need for treatment." J.A. 11.

After experiencing hip and groin pain, Doe consulted with Murphy, who suggested treatment with a "targeted sports massage on his left hip flexor groin area." J.A. 12. Murphy met with Doe alone and directed him to remove all his undergarments except for his "loose practice shorts," so he could "reach the groin area better."  J.A. 12.

Doe complied, and Murphy used his bare hands to massage Doe's groin area. While doing so, he "touched and/or moved [Doe]'s penis" and made "continuous skin-to-skin contact" with Doe's genitals. J.A. 12–13.  Murphy did so without asking for Doe's consent, without asking Doe to "move or hold his genitals out of the way," without offering Doe a towel to cover or move his genitals out of the way, and, most appallingly, without medical necessity.  J.A. 13.  Murphy's unexpected behavior during what was purportedly medical treatment made Doe uncomfortable.

When Doe's pain didn't subside, he again reported it to Murphy, who again suggested a "targeted sports massage." J.A. 13.  Doe visited Murphy a second time and

3

had a similar experience. After these incidents, Doe no longer allowed Murphy to treat him and avoided interacting with him.

Though Doe remained uncomfortable with Murphy's conduct, he convinced himself that he was overreacting because Murphy was a licensed athletic trainer and because, as a student athlete, Doe had to follow Murphy's instructions. These incidents hurt Doe's performance in his courses and diminished his opportunities to participate in his athletic program.

In 2022 and 2023, Doe learned of two Title IX lawsuits filed against the university by student athletes that Murphy had allegedly sexually harassed. Among other things, the complaints stated:

(1) In early 2016, Head Soccer Coach Kelly Findley told Senior Associate Athletic Director Sherard Clinkscales "that Murphy was engaging in what he suspected was sexual grooming of male student-athletes." J.A 16.

(2) In August 2017, "Murphy's duties . . . were changed to be more 'administrative,'" and he was "removed as the designated athletic trainer for certain men's teams." J.A. 16.

(3) In 2018, the university promoted Murphy from the rank of Assistant Athletic Director to Associate Athletic Director and gave him a raise.

(4) In 2022, the university conducted a Title IX investigation into Murphy's conduct after a student athlete reported that Murphy touched his genitals under the guise of medical treatment. Based on its investigation, the university concluded that Murphy engaged in misconduct.

B.

Doe sued the university under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688. He alleges that the university failed to respond to Findley's earlier

4

complaint to Clinkscales "that Murphy was engaging in what [Findley] suspected was sexual grooming of male student-athletes." J.A. 16.

The university moved to dismiss Doe's complaint under Federal Rule of Civil Procedure 12(b)(6). It argued that Doe failed to allege that the university received actual notice of Murphy's sexual harassment—as required for the university to be liable under Title IX for the sexual harassment of a student by an employee. *Doe 2 v. N.C. State Univ.*, No. 23-CV-216, 2023 WL 5916451, at *2 (E.D.N.C. Sept. 11, 2023). The district court granted the motion.

The court explained that a university has actual notice when "a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment." *Id.* (quoting *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 262 (4th Cir. 2021)). In other words, the institution must be "aware of an allegation that an employee is currently [sexually harassing] a student." *Id.* (cleaned up).

The district court "assume[d] without deciding" that Clinkscales had the requisite authority to address complaints. *Id.* at *3 n.4. So it focused on whether Findley's report to Clinkscales could objectively be construed as sexual harassment. The court concluded that Findley's report that "Murphy was engaging in what [Findley] suspected was sexual grooming of male student athletes" wasn't enough.[2] *Id.* at *3 (quoting J.A. 16).

---

[2] The district court also found that "the requisite notice [could not] be inferred" from the complaint's allegations that Findley and two assistant coaches knew of Murphy's

5

The district court found Findley's statement lacking because it reported "allegedly suspected conduct," and it didn't describe an incident of sexual harassment. *Id.* Because a university must receive a report of "an incident" of sexual harassment, "allegedly suspected conduct" or conduct that suggests a "substantial risk of ongoing or future misconduct" isn't enough. *Id.* (cleaned up). Thus, the district court concluded that "Findley's communication of 'what he suspected was sexual grooming' does not support a plausible inference of actual notice to [the university]." *Id.*

Next, the district court rejected Doe's argument that "Murphy's 2017 reassignment to an administrative role" gave rise to an inference of actual notice. *Id.* It noted that the reassignment occurred more than a year after Findley reported his suspicions to Clinkscales, and was "merely consistent with," but did not "plausibly suggest," a Title IX violation. *Id.* (cleaned up).

The district court dismissed Doe's complaint without prejudice.[3] *Id.* at *4. This appeal followed.

---

misconduct and failed to report it. *Doe 2*, 2023 WL 5916451, at *3. Doe doesn't challenge that conclusion on appeal.

[3] Because the district court's order didn't grant Doe leave to amend his complaint, the order dismissing the complaint without prejudice is a final order over which we have jurisdiction. *Britt v. DeJoy*, 45 F.4th 790, 798 (4th Cir. 2022) (en banc).

II.

We review a dismissal under Rule 12(b)(6) de novo. *Turner*, 930 F.3d at 644. Doe's complaint must provide "sufficient factual matter, accepted as true," to state a claim to relief under Title IX that's plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Title IX provides that "[n]o person . . . shall, on the basis of sex, . . . be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To prove a Title IX violation based on sexual harassment, a plaintiff must show that

> (1) [he] was a student at an educational institution receiving federal funds, (2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

*Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). Only the final element is at issue.

A university is liable for the sexual harassment of its students by an employee if an appropriate person at the university "has actual notice of, and is deliberately indifferent to, the [employee]'s misconduct."[4] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998). An appropriate person is "an official [of the university] who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the

---

[4] In the Title IX context, "actual knowledge" is sometimes used interchangeably to mean "actual notice." *Fairfax Cnty.*, 1 F.4th at 265–66.

[university]'s behalf." *Id.* at 290. Such an official has actual notice where he "receives a report that can objectively be construed as alleging sexual harassment." *Fairfax Cnty.*, 1 F.4th at 265.

The parties dispute whether Findley's allegation of Murphy's "sexual grooming of male student-athletes" was objectively an allegation of sexual harassment. We conclude that it was.

A.

Doe argues that a report of "sexual grooming" can provide actual notice of sexual harassment because a "reasonable official would construe it as alleging misconduct prohibited by Title IX." *Id.* at 268; *accord* Appellant's Opening Br. at 18. "Grooming," according to Doe, is "conduct defined by its role in sexual abuse." Appellant's Opening Br. at 21. And—when modified by "sexual" and taken in the light most favorable to Doe— it refers to "predatory sexual conduct" that is sexual harassment. *Id.* at 21–22.

The university counters that the district court properly dismissed Doe's complaint because Doe failed to allege that Findley reported "facts that *objectively* amount[] to *sexual harassment*." Appellee's Resp. Br. at 14 (quoting *Fairfax Cnty.*, 1 F.4th at 265). The university advances three arguments.

First, the university argues that because Doe's complaint doesn't provide "context or factual descriptions of what the 'grooming' entailed," *id.*, its allegations of grooming are "devoid of further factual enhancement" and are therefore insufficient, *id.* at 15 n.4 (quoting *Iqbal*, 556 U.S. at 678).

8

Second, according to the university, a report of "sexual grooming" is insufficient to provide actual notice because grooming can include conduct that isn't sexual harassment. The university notes that two district courts have found that "conduct described as 'grooming' does not necessarily correspond to conduct amounting to harassment." *Id.* at 15 (citing *Doe v. Madison Metro. Sch. Dist.*, No. 15-CV-570, 2017 WL 527892, at *5 (W.D. Wis. Feb. 9, 2017); *S.P. v. Ne. Indep. Sch. Dist.*, No. SA-21-CV-0388, 2021 WL 3272210, at *6 (W.D. Tex. July 30, 2021)). And in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), the Supreme Court found that "complaints that a teacher made inappropriate comments," *id.* at 291, which the university argues could be considered grooming, were insufficient to provide actual notice of sexual harassment.[5] Appellee's Resp. Br. at 17. Because grooming encompasses conduct that isn't sexual harassment, the university concludes that a report of "grooming" can't objectively allege sexual harassment.

Finally, the university says that Findley's report couldn't provide actual notice of sexual harassment "*currently*" occurring. *Id.* at 17–18 (quoting *Fairfax Cnty.*, 1 F.4th at 265). As the university puts it, "knowledge in 2016 of suspicions of 'grooming' does not establish that [the university] had actual notice that Murphy was harassing students in 2021." *Id.* at 18.

---

[5] The plaintiffs in *Gebser* "d[id] not contend [that] they [could] prevail under an actual notice standard," 524 U.S. at 291, as they asked the Court to adopt a constructive notice standard for Title IX claims based on sexual harassment of a student by an institution's employee. The Court determined such claims require that the institution have actual notice. *Id.* at 290.

9

As explained below, we agree with Doe.

B.

For a university to be liable under Title IX for sexual harassment, it must have had "actual [notice] of discrimination in [its] programs." *Jennings*, 482 F.3d at 700 (quoting *Gebser*, 524 U.S. at 290). In *Jennings v. University of North Carolina*, 482 F.3d 686 (4th Cir. 2007) (en banc), we found that the university had actual notice because an appropriate official received a report of sexual harassment. *Id.* at 700–01.

For a report to provide actual notice, it must be one "that can objectively be understood as alleging sexual harassment," "regardless of whether the school in fact construed" it as such. *Fairfax Cnty.*, 1 F.4th at 264. The report need not identify "that a particular student was being [sexually harassed]," but it must allege that a student "was currently" being sexually harassed. *Baynard v. Malone*, 268 F.3d 228, 238 n.9 (4th Cir. 2001); *accord Fairfax Cnty.*, 1 F.4th at 265.

Reports that support only "a general, *substantial risk* of—or the *potential* for—ongoing or future misconduct" cannot provide actual notice of "current [sexual harassment]." *Fairfax Cnty.*, 1 F.4th at 265 (cleaned up). The ultimate inquiry is "whether a reasonable official would construe [the report] as alleging misconduct prohibited by Title IX." *Id.* at 268.

C.

Doe alleges that Findley reported to Clinkscales "that Murphy was engaging in what he suspected was sexual grooming of male student-athletes." J.A. 16. We conclude that such a report "can objectively be construed as alleging sexual harassment" and that, at the

10

pleading stage, an allegation that such a report was made to an appropriate official is sufficient to plausibly plead that an institution had actual notice of sexual harassment. *Fairfax Cnty.*, 1 F.4th at 265.

"Grooming" is susceptible to many definitions, each capturing a slightly different range of conduct. *See, e.g.*, *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012) ("deliberate actions taken by a defendant to expose a child to sexual material[,] the ultimate goal of [which] is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity" (quoting *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011))); *United States v. Park*, 938 F.3d 354, 373 (D.C. Cir. 2019) (the process in which "the abuser uses inducements such as money, treats, gifts, and fun trips to establish trust, which then allows the offender to control and manipulate the child into participating in sexual abuse" (cleaned up)); *United States v. Batton*, 602 F.3d 1191, 1198 n.3 (10th Cir. 2010) ("the process whereby a sex offender earns the trust and confidence of a victim before engaging in a sexual act"); *United States v. Johnson*, 132 F.3d 1279, 1283 n.2 (9th Cir. 1997) ("the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point of intercourse"); *Grooming: Know the Warning Signs*, RAINN (July 10, 2020), https://rainn.org/news/grooming-know-warning-signs [https://perma.cc/3ZYJ-T5SQ] ("manipulative behaviors that the abuser uses to gain access to a potential victim, coerce them to agree to the abuse, and reduce the risk of being caught"); *Groom*, Merriam-Webster, https://www.merriam-webster.com/dictionary/groom [https://perma.cc/R3PV-HEQ7] ("to make (someone) ready for a specific objective" or "to build a trusting

11

relationship with (a minor) in order to exploit them especially for nonconsensual sexual activity").

These definitions of "grooming" may well capture conduct that—standing alone—wouldn't constitute sexual harassment. But the term, particularly when modified by "sexual,"[6] connotes a distinct and wrongful purpose. However outwardly benign the actions, the goal of grooming is to exploit a position of power or trust to coerce a victim to engage in sexual activities.

Grooming describes a pattern of behavior, not an isolated act. And while a report that an employee is committing seemingly innocent acts (that are, in fact, sexual grooming) may not objectively allege sexual harassment,[7] the same can't be said of a report of "sexual grooming." Under any definition, the term "sexual grooming" connotes a pattern of wrongful and sexually motivated conduct.

---

[6] In this context, "sexual" means "implying or symbolizing erotic desires or activity," *Sexual*, American Heritage Dictionary of the English Language (1976), or "of or relating to the sphere of behavior associated with libidinal gratification," *Sexual*, Webster's Third New International Dictionary (1971); *accord Sexual*, Webster's Third New International Dictionary (2002).

[7] As the university points out, courts have found that reports or observations of conduct that may be considered grooming were not sufficient to provide actual notice. *See, e.g., Madison Metro.*, 2017 WL 527892, at *5; *S.P.*, 2021 WL 3272210, at *6; *Gebser*, 524 U.S. at 291. But in none of these instances did the institution receive a report that characterized the conduct as "grooming." Rather, the plaintiffs either characterized the alleged conduct as grooming in their filings, *Madison Metro.*, 2017 WL 527892, at *6; *S.P.*, 2021 WL 3272210, at *4–5, or didn't mention grooming at all, *Gebser*, 524 U.S. at 291.

12

Drawing all reasonable inferences in Doe's favor, "a reasonable official would construe" Findley's report of "sexual grooming" as alleging sexual harassment. *Fairfax Cnty.*, 1 F.4th at 268. That's because Findley's report specified wrongful conduct that was sex-based, current, and committed by an employee with authority over student athletes.

First, Findley reported to Clinkscales that Murphy's misconduct was directed at "male student-athletes," J.A. 16, meaning that Murphy was "targeting the [student athletes] because of their sex," *Jennings*, 482 F.3d at 696. Second, he described Murphy's *current conduct*—conduct that Murphy "was [then] engaging in." J.A. 16. Third, he identified Murphy as the transgressor.

As the Supreme Court has recognized, "[t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to [violate] Title IX." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 653 (1999). Misconduct committed by an employee, particularly one who exercises authority over a student, is more likely to violate Title IX than misconduct committed by a peer. *Id.*

We thus conclude that Doe has sufficiently pleaded that Findley's report is one that "a reasonable official would construe . . . as alleging misconduct prohibited by Title IX."[8] *Fairfax Cnty.*, 1 F.4th at 268.

---

[8] To the extent that the district court suggested Findley's report couldn't allege sexual harassment because it contained merely "suspected conduct," *Doe 2*, 2023 WL 5916451, at *3, we would disagree. An institution can have actual notice of sexual harassment based on an unsubstantiated report. *Fairfax Cnty.*, 1 F.4th at 268. Because actual notice triggers the institution's obligation to investigate, "[i]t would be illogical to require a school to investigate a complaint alleging sexual harassment only if it has *already* determined that such harassment did in fact occur" and equally illogical "to require [an

13

The university's remaining arguments don't convince us otherwise.

The university argues that Findley's report couldn't provide the requisite notice because he reported Murphy's sexual grooming years before Murphy sexually abused Doe. That's wrong.

When an institution receives actual notice, its duty to investigate or to otherwise act is triggered. *Fairfax Cnty.*, 1 F.4th at 268 (citing *Davis*, 526 U.S. at 649–50). Actual notice requires "that the school [be] aware of an allegation that [an employee] [is] *currently* [sexually harassing] a student." *Id.* at 265. "[C]urrently" means when an allegation of sexual harassment is made—not necessarily, as the university suggests, at the time of the plaintiff's harassment.

To hold otherwise would be inconsistent with the deliberate indifference theory of liability under Title IX: Under the university's interpretation, it would not be enough for a plaintiff to show that his university was deliberately indifferent to a prior report of then-occurring sexual harassment by his harasser. Instead, he would have to show that his university *also* had actual notice of sexual harassment by his harasser at the time of the plaintiff's harassment, even though the university's deliberate indifference to the prior report led to his harassment. *Davis*, 526 U.S. at 645. That is not the law.

Nor, as the university argues, are Doe's allegations of sexual grooming "devoid of [the requisite] factual enhancement." Appellee's Resp. Br. at 15 n.4 (quoting *Iqbal*, 556

---

individual] alleging sexual harassment to bear the burden of substantiating their claim with adequate evidence at the time of their initial report, *before* the school undertakes an investigation." *Id.* So too here.

14

U.S. at 678). When a plaintiff alleges that an institution knew of certain conduct that the plaintiff later characterizes as grooming, "context or factual descriptions of what the 'grooming' entailed" may be needed. *Id.* at 14. Doe, however, alleges that a university employee received a report that his harasser was "engaging in . . . sexual grooming." J.A. 16. Additional "factual enhancement"—and, indeed, evidence—on the substance of Findley's report to Clinkscales will be required past the pleading stage. But at least for now, Doe has sufficiently alleged that the university received a report that objectively alleged sexual harassment.

The district court erred in holding otherwise.

III.

Of course, for the university to have actual notice, the report of Murphy's sexual grooming must have reached an appropriate official. The district court assumed without deciding that Clinkscales was an appropriate official with "authority to address complaints of sexual harassment and to institute corrective measures" on behalf of the university. *Fairfax Cnty.*, 1 F.4th at 262. The parties now ask us to decide whether Doe's complaint supports such an inference.

The university argues that the complaint's allegations on this point are insufficient because they consist of little more than Clinkscales's title. Appellee's Resp. Br. at 7–8. But the district court didn't address this question, and we decline to decide it in the first instance. We are, after all, "a court of review, not of first view." *Grimmett v. Freeman*, 59 F.4th 689, 696 (4th Cir. 2023) (cleaned up).

15

Accordingly, we remand the case to the district court to decide this issue. The district court should consider whether to grant Doe leave to amend his complaint, should he so move.

*VACATED AND REMANDED*